**DANIEL J. KAISER [DK-9387]**
**WILLIAM H. KAISER [WK-7106]**
**KAISER SAURBORN & MAIR, P.C.**
**ATTORNEYS FOR PLAINTIFF**
**30 BROAD STREET, 37th FLOOR**
**NEW YORK, NEW YORK 10004**
**(212) 338-9100**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
MARGARET O'BOYLE,

       Plaintiff,　　　　　　　　　　**COMPLAINT**

  -against-　　　　　　　　　　　　　　　**Civil Action No.**

AIRLOGIX/BAYSIDE REFRIGERATION, INC.,　　**JURY TRIAL DEMANDED**

       Defendants.
-----------------------------------------------------------------X

      Plaintiff, Margaret O'Boyle, by her attorneys, Kaiser Saurborn & Mair, P.C., as and for her Complaint against defendant, alleges as follows:

### PARTIES, JURISDICTION, AND NATURE OF ACTION

      1.    Plaintiff, Margaret O'Boyle ("O'Boyle" or "plaintiff"), is a legal resident of the State of New York residing in Queens County.

      2.    Defendant, Airlogix/Bayside Refrigeration, Inc. ("Airlogix") is a New York corporation with its principal place of business at 24-26 46th Street, Astoria, New York 11103.

      3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under the Fair Labor Standards Act, 29 U.S.C. § 215, as defendant terminated her in retaliation for her complaints of failure to pay proper wages and overtime. Plaintiff also asserts claims pursuant to New York State Labor Law § 740, pursuant to

1

pendant jurisdiction, as defendant terminated her in retaliation for complaining of workplace health and safety violations.

4.	Venue is proper as the unlawful conduct giving rise to this complaint occurred within the Eastern District of New York, plaintiff resides in the Eastern District of New York and the defendant is headquartered in the Eastern District of New York.

I.

**MS. O'BOYLE'S EMPLOYMENT**

5.	Ms. O'Boyle was hired by Airlogix in March 2018, as the Company's Human Resources Manager by CEO Gerri Domenikos; part of her role was to create a Human Resources Department as a start-up and ensure the Company was in compliance with all applicable labor and employment laws.

6.	Among her responsibilities was to create and distribute an Airlogix employee handbook detailing the policies and procedures of the Company. Ms. O'Boyle began the project in April 2018 and completed it in June 2018.

7.	The finished product was sent to Adam Love, Esq. ("Love"), AirLogix Corporate Counsel, for approval for publication.

8.	The Airlogix Employee Handbook was distributed to all employees by September 2018.

9.	In addition, Ms. O'Boyle created a Sexual Harassment Training Program for all Airlogix employees, accompanied by a quiz to ensure employees understood what is acceptable behavior and unacceptable behavior in the workplace.

10.	During all relevant times herein, Ms. O'Boyle performed her job responsibilities in superior fashion.

11. During all relevant times herein, Defendant was responsible for maintaining a work environment free of unlawful retaliation.

## II.
## MS. O'BOYLE'S REPEATED COMPLAINTS AND THE RESULTING RETALIATION

12. Months prior to her arrival at Airlogix, New York's Department of Labor ("DOL") began an audit for alleged underpayment of Prevailing Wages to Technicians working on or in connection with public contracts and requested information and various documents be produced.

13. Ultimately, after Ms. O'Boyle was hired, due to Airlogix's failure to cooperate, the DOL sent a letter to Airlogix advising that a DOL representative would be at Airlogix's office in three (3) days and that all requested information and documents were to be given to the investigator at that time or Airlogix could be shut down and fined.

14. When Ms. O'Boyle spoke to CEO Domenikos about the Department of Labor's directive, Domenikos stated that she would not answer any questions from nor provide documents to DOL. Ms. O'Boyle immediately called Love, who then instructed Domenikos to comply with the Labor Department's directive.

15. In response, Domenikos told Ms. O'Boyle to "take care of it." After five months of a grueling investigation, the matter was resolved with a minimal fine of $700.00.

16. In or about October 2018, Ms. Boyle became aware that an Airlogix employee was sent out repeatedly without having obtained an OSHA 10 Certification Card, was not at all certified and therefore both he and Airlogix were in violation of OSHA regulations. COO Gabe Domenikos devised a plan to make a copy of an active employee OSHA Card and re-type the name of the uncertified employee.

17. Gabe Domenikos then instructed the employee to show the fraudulent card to any OSHA Inspector or Project Manager on the jobs he worked.

18. Upon finding proof of the fraudulent OSHA Certification Card made by the COO, Ms. O'Boyle explained to Gabe Domenikos and General Manager Stratos Giannikos ("Giannikos") that this was a very serious violation of OSHA and cannot happen going forward so long as she was Human Resources Manager for the Company.

19. The employee was terminated.

20. Later, in or about March 2019, Gabe Domenikos emailed Ms. O'Boyle with instructions to arrange the rehire of the same uncertified employee.

21. Ms. O'Boyle again refused and reached out to the CEO and explained once again the reasons not to rehire the uncertified employee.

22. CEO Domenikos agreed at the time and instructed Gabe Domenikos that the uncertified employee would not be brought back to the Company.

23. In another instance, in June 2019, an employee arrived to work after calling out sick for three days and was informed by Ms. O'Boyle to bring a doctor's note to HR before reporting to a job. The employee arrived to work limping.

24. Ms. O'Boyle consequently told the employee to go back to his doctor and get checked for his leg injury before returning to work.

25. She explained to him that in order for him to return to work, he would need a *Full Release -Return to Work Form* signed by his Doctor.

26. Gabe Domenikos became upset over what he oddly viewed as Human Resources interfering with his operations and Technicians, rather than merely performing its function to ensure the Company is in compliance with OSHA and all other work safety regulations.

4

27. In response, Gabe Domenikos told all the Technicians in the Warehouse "Fuck HR, I am the COO and I decide who can work."

28. He immediately thereafter ignored Ms. O'Boyle's instructions and sent the injured employee out to work on rooftop AC Units, without any concern about the employee's health or liability to the Company.

29. Ms. O'Boyle complained directly to Gabe Domenikos and General Manager Stratos Giannikos and advised both that Gabe Domeniko's actions violated Insurance Company regulations and OSHA safety laws.

30. In another instance, Airlogix's CEO and COO refused to take action when a random drug test was failed by a technician.

31. Ms. O'Boyle was told that "marijuana should be legalized and we will not lose a good technician due to a failed drug test." This was a clear safety violation of OSHA.

32. The issue came up when a Technician failed his drug test twice and HR, pending a 30 day suspension, would retest the employee.

33. If the employee failed the third drug test he would be automatically terminated per written company policy.

34. COO Domenikos, however, directed the employee to ignore HR and sent him back to work.

35. That employee then told all his fellow technicians that the COO said to ignore HR and come to him with any issues, thereby bypassing Ms. O'Boyle entirely.

36. Ms. O'Boyle brought numerous other concerns to the CEO and COO regarding technicians not wearing mandatory PPE, Personal Protection Equipment, such as hard hats,

gloves, goggles and work boots. Many Technicians were wearing sneakers. This violated OSHA safety regulations and posed a danger to both employees and the public.

37. In response to her complaints to upper management, Ms. O'Boyle was told "we do not give a shit, as long as they get the job done".

38. In August 2019, Ms. O'Boyle emailed Airlogix's CEO, COO and legal counsel, warning them of repeated verbal complaints from employees communicated to her requesting help concerning Airlogix's failure to pay prevailing wages and overtime pay for June-August 2019.

39. Both the failure to pay prevailing wages and overtime violated the Fair Labor Standards Act.

40. Ms. O'Boyle advised senior management that the company's failure to pay proper prevailing wages and overtime violated federal and state law.

41. Ms. O'Boyle also advised the Company that they should not be using Airlogix's employees to work their overtime for personal projects on the COO's personal property,

42. Ms. O'Boyle's repeated efforts to obtain the owed overtime for the employees who complained to her were repeatedly and consistently rebuffed.

43. She requested a list of all prevailing wage jobs and wage rates to compare with the employee pay checks to review.

44. She was ignored, so she wrote again on the same issue in September 2019 but was again ignored by upper management.

45. Faced with silence by senior management, Ms. O'Boyle called the Labor Department and requested the rate sheet and confirmed the underpayment of prevailing wage rates of the Airlogix Technicians.

46. She therefore repeatedly emailed the CEO, the COO, and the GM responsible for weekly payroll, the Service Manager and Airlogix's corporate counsel, demanding that the employees be paid all that is owed them on the next pay period October 25, 2019. Again, her emails were ignored.

47. Ms. O'Boyle's final email regarding Airlogix's clear violation of New York's Labor Laws and OSHA, was sent to CEO Domenikos, COO Domenikos and corporate counsel Love on October 22, 2019.

48. Ms. O'Boyle specifically stated in the email that if the Company failed to correct the underpayments she brought to its attention by October 25, 2019, she would complain to the New York State Department of Labor.

49. On October 23, 2019, Ms. O'Boyle was terminated allegedly "for cause" and without further explanation.

50. In truth, Ms. O'Boyle was terminated in retaliation for her complaints regarding the defendant's failure to pay proper prevailing wages and overtime in violation of the Fair Labor Standards Act and for complaining of clear OSHA safety violations.

**FIRST CAUSE OF ACTION**

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "50" of the complaint with the same force and effect as if separately alleged and reiterated herein.

52. Defendant retaliated against plaintiff because she complained of unpaid wages of company employees by terminating her in violation of the Fair Labor Standards Act, 29 U.S.C. § 215.

53. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits and emotional injuries, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "50" and "52" of the complaint with the same force and effect as if separately alleged and reiterated herein.

55. Defendants retaliated against plaintiff because of her complaints of workplace safety violations, that undisputedly endangered public health and safety, by terminating her in violation of New York State Labor Law § 740.

56. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits and emotional injuries, in an amount to be determined at trial.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

(i) On the First Cause of Action, actual damages against defendant in an amount to be determined at trial;

(ii) On the Second Cause of Action, actual damages against defendant in an amount to be determined at trial;

 (iii) attorney fees, disbursements and other costs; and

 (iv) for such other relief which the Court deems just and proper.

Dated: New York, New York
   April 1, 2020

               **KAISER SAURBORN & MAIR, P.C.**

By: _____
               Daniel J. Kaiser
               William H. Kaiser

               Daniel J. Kaiser [DK-9387]
               William H. Kaiser [WK-7106]
               Attorneys for Plaintiff
               30 Broad Street, 37th Floor
               New York, New York 10004
               (212) 338-9100